**SECOND DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**May 7, 2021**

# In the Court of Appeals of Georgia

A19A1492. AGUILA v. KENNESTONE HOSPITAL, INC.

HODGES, Judge.

In *Aguila v. Kennestone Hospital*, 353 Ga. App. 17 (836 SE2d 179) (2019) ("*Aguila I*"), we reversed an order by the State Court of Cobb County granting Kennestone Hospital, Inc.'s motion to dismiss Rudy Aguila's complaint for fraud, negligent misrepresentation, and violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, arising from a hospital lien Kennestone filed following its treatment of Aguila. See OCGA § 44-14-470 et seq. Our Supreme Court granted Kennestone's petition for certiorari, vacated our judgment in *Aguila I*, and remanded the case for our reconsideration in view of *Bowden v. The Medical Center*, 309 Ga. 188 (845 SE2d 555) (2020). Having now done so, we affirm.

As we noted in *Aguila I*, Aguila received treatment at Kennestone for injuries sustained in a motor vehicle collision. 353 Ga. App. at 18. When Kennestone learned that Aguila's injuries were the result of a collision in which a third party could be liable,

> it filed a hospital lien pursuant to OCGA § 44-14-471 in the amount of $16,053.25. Aguila alleged that the lien was "for the full 'chargemaster' rate[1] or 'sticker price' which does not represent a reasonable charge for the treatment he received, and Kennestone knew it." Kennestone offered to reduce the lien and, ultimately, Aguila satisfied the lien for $11,700.

(Punctuation omitted.) Id. Thereafter, Aguila sued Kennestone for fraud, negligent misrepresentation, and violations of the RICO Act. To that end,

> Aguila averred that Kennestone accepted the chargemaster rate for only 27% of its patients and that, as a result, the true value of Aguila's treatment was $4,353.25. Kennestone answered and filed a motion to dismiss, primarily asserting that Aguila failed to demonstrate that Kennestone made a false statement in its OCGA § 44-14-471 verified statement in support of its lien. Following a hearing, the State Court of Cobb County granted Kennestone's motion[.]

---

[1] For a detailed description of a hospital's "chargemaster rate," see *Bowden*, 309 Ga. at 189 (I), n. 2, citing *The Medical Center v. Bowden*, 348 Ga. App. 165, 168 (820 SE2d 289) (2018).

(Punctuation omitted.) Id. We reversed based upon this Court's decision in *Clouthier v. The Medical Center of Central Ga.*, 351 Ga. App. 883 (833 SE2d 584) (2019), overruled by *Bowden*, 309 Ga. at 188. Our Supreme Court granted Kennestone's petition for certiorari, vacated our judgment, and remanded the case for reconsideration.[2]

1. Aguila contends that the trial court erred in granting Kennestone's motion to dismiss because the trial court incorrectly held that Kennestone did not make a false or misleading statement in its verified statement in support of its lien. Stated succinctly, Aguila essentially argues that Kennestone's use of its chargemaster rate

---

[2] In so doing, we remain mindful of our standard of review:

[a] motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

(Citation omitted.) *Aguila I*, 353 Ga. App. at 17.

in its lien is per se unreasonable. Having reconsidered Aguila's argument in view of

*Bowden*, we disagree.

In *Bowden*, our Supreme Court explained that

OCGA § 44-14-470 (b) provides that a hospital "shall have a lien for its reasonable charges." However, in order to perfect a lien for those "reasonable charges," a hospital must follow the procedures set forth in OCGA § 44-14-471 (a) (2) (A):

> In order to perfect [a hospital] lien provided for in Code Section 44-14-470, the operator of the hospital … [s]hall file in the office of the clerk of the superior court of the county in which the hospital … is located and in the [Georgia] county wherein the patient resides … a verified statement setting forth … the amount claimed to be due for the hospital … within 75 days after the [patient] has been discharged from the facility[.]

Thus, by filing a verified statement setting forth "the amount claimed to be due" within 75 days of a patient receiving treatment, a hospital perfects a lien for its "reasonable charges" as may be determined later.

Pursuant to OCGA § 44-14-471 (a) (2) (A), the "amount [that the hospital] claim[s] to be due" for its services need not be "exact on the date [the lien is] filed." Indeed, because so many factors can affect the determination of what a "reasonable charge" may actually be for a hospital's services, a hospital may not know within 75 days of providing

4

medical services to a patient exactly what a reasonable charge is supposed to be under the circumstances. As a result, there is some flexibility in the initial OCGA § 44-14-471 (a) (2) (A) filing so long as there is some basis for what the hospital "claim[s] to be due."

(Citations, punctuation, and emphasis omitted). 309 Ga. at 200 (II) (2) (b). "[T]hat is why," the Court reasoned, "in general, the hospital's use of a standard charge for all patients who receive the same treatment can be sufficient for perfecting a hospital lien under Georgia's lien statutes." Id.

In this case, Aguila's claims of fraud, negligent misrepresentation, and violations of the RICO Act mirror Bowden's allegations. Cf. *Tenant v. State*, 229 Ga. App. 20, 21, n. 1 (492 SE2d 909) (1997) ("we take judicial notice of the briefs of the parties in the prior appeal, which remain before us, as well as our factual and legal determinations as to the issues raised in the prior appeal"). As to Aguila's claims for fraud and negligent representation, then,

> it cannot be said that [Kennestone] has no basis for using its chargemaster rates to come up with an "amount claimed to be due" for purposes of securing a lien for whatever its "reasonable charges" may ultimately be determined to be. That the amount that [Kennestone] initially has "claimed to be due" under OCGA § 44-14-471 (a) (2) (A) is significantly higher than the actual amount that [it] can collect on its

5

lien as the "reasonable charges" to [Aguila] for [his] medical treatment does not establish fraudulent intent. See OCGA § 44-14-470 (b).

*Bowden*, 309 Ga. at 201 (II) (2) (b). Therefore,

> [r]eading OCGA § 44-14-471 (a) (2) (A) and OCGA § 44-14-470 (b) together, as we must, we conclude that there is nothing "fraudulent" about [Kennestone] using its standard chargemaster rates as "the amount claimed to be due for the hospital" to perfect its lien for its "reasonable charges" against [Aguila's] potential tort recovery. OCGA § 44-14-471 (a) (2) (A).

Id. at 201-202 (II) (2) (b).[3] Similarly, Aguila's RICO violations claim also fails as a matter of law. See id. at 202-203 (II) (3), citing *Bowden*, 348 Ga. App. at 185 (3) (a) ("Assuming [Kennestone's] lien amounts based on its chargemaster rates were actually unreasonable, such does not render the practice of filing liens, as permitted by statute, one of the RICO predicate offenses.") (emphasis and punctuation omitted).

---

[3] Our Supreme Court's analysis in *Bowden*, which was an appeal from an order denying a motion for summary judgment, applies with equal force in this case, which arises from a motion to dismiss. This is so because *Bowden* determined, as a matter of law, that a hospital's initial use of a chargemaster rate to perfect its lien is not a fraudulent practice. As a result, it follows that "the allegations of [Aguila's] complaint disclose with certainty that [he] would not be entitled to relief under any state of provable facts asserted in support thereof" and that Kennestone established that Aguila "could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought." (Citation omitted.) *Aguila I*, 353 Ga. App. at 17.

Like Bowden, then, "[i]f [Aguila] believes that the amount that [Kennestone] claims to be due does not reflect the reasonable charges for [his] medical treatment, [he] can contest the reasonableness of the amount, because OCGA § 44-14-470 (b) only authorizes a lien for the "reasonable charges" of [Kennestone's] medical services." *Bowden*, 309 Ga. at 202 (II) (2) (b).

2. In view of our decision in Division 1, we need not consider Aguila's preemptive statements in response to Kennestone's additional arguments for dismissal. See *Walker County v. Tri-State Crematory*, 292 Ga. App. 411, 412 (664 SE2d 788) (2008) ("The dismissal of a complaint will be affirmed if right for any reason.").

*Judgment affirmed. Dillard, P. J., and Gobeil, J., concur.*