**THIRD DIVISION
DILLARD, C. J.,
GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**June 28, 2019**

# In the Court of Appeals of Georgia

A19A0151. ENDOCHOICE HOLDINGS, INC. et al. v. KENNETH
   T. RACZEWSKI et al.

A19A0152. J.P. MORGAN SECURITIES, LLC et al. v. KENNETH
   T. RACZEWSKI et al.

GOBEIL, Judge.

In this securities fraud action, Kenneth T. Raczewski and Jesse L. Bauer sued EndoChoice Holdings, LLC ("EndoChoice") and certain of its executives and directors,[1] together with J.P. Morgan Securities, LLC, Merrill Lynch, Pierce, Fenner, & Smith, Inc., William Blair and Company, LLC, and Stifel, Nicolaus, & Company, Inc. (collectively, the "defendants") for violations of the Securities Act of 1933[2] in

---

[1] The executives and directors named in the suit are: Mark G. Gilreath, David N. Gill, R. Scott H. Heunnekens, James R. Balkcom, Jr., J. Scott Carter, D. Scott Davis, Uri Geiger, David L. Kaufman, Rurik G. Vandevenne.

[2] 15 USC § 77a et seq.

connection with EndoChoice's 2015 initial public offering ("IPO"). The defendants appeal from the certification of the class, arguing that the trial court abused its discretion in certifying the class under OCGA § 9-11-23 (a) (4) and (b) (3). After a review of the record, we affirm the Superior Court of Fulton County's grant of class certification.

The record shows that EndoChoice is a medical device company specializing in products used by gastrointestinal medical providers. Its principal place of business is in Alpharetta, Georgia. EndoChoice's IPO took place on June 5, 2015. In connection with the IPO, EndoChoice filed a registration statement on Form S-1 and Form S-1/A and a Prospectus (collectively, the "offering materials") with the U.S. Securities and Exchange Commission ("SEC"), offering 6,350,000 shares of EndoChoice common stock at a price of $15 per share. The offering materials highlighted the "Fuse" endoscopy system, EndoChoice's "flagship" product. The offering materials also detailed EndoChoice's "world-class" sales force and a second generation version of the Fuse system.

On November 5, 2015, EndoChoice reported its results for the third quarter of 2015, announcing that it had sold 21 Fuse units, a number that fell short of the projected 26-27 units. EndoChoice's stock price fell from $10.28 to $8.01 per share

after this news. Following a series of public disclosures about the company's continued failure to meet projected sales goals, EndoChoice shares closed at $5.09 per share as of July 15, 2016. Thereafter, on September 27, 2016, EndoChoice agreed to be acquired by Boston Scientific for $8 per share. The merger closed in November of 2016.

Bauer purchased 50 shares of EndoChoice stock on June 5, 2015, for $14.50 per share, and 50 shares on June 9, 2015, for $19.00 per share. He sold his shares on November 21, 2016, at a price of $8 per share. Raczewski purchased 750 shares of EndoChoice stock on June 10, 2015, for $17.40 per share. He sold his shares on October 12, 2016, at a price of $7.97 per share.

Bauer and Raczewski (collectively, the "plaintiffs") filed the underlying complaint under §§ 11, 12 (a) (2), and 15 of the Securities Act of 1933 (the "Securities Act"),[3] alleging that the offering materials contained material

---

[3] Sections 11, 12 (a) (2), and 15 of the Securities Act are codified as follows: 15 USC §§ 77k, 77l (a) (2), and 77o, respectively. Section 11 provides for civil liability on account of a false registration statement and § 12 (a) (2) provides for liability based on misstatements in a prospectus. *Gustafson v. Alloyd Co., Inc.*, 513 US 561, 571 (II) (A) (115 SCt 1061, 131 LEd2d 1) (1995). Section 15 is derivative of § 11 claims, and provides liability for persons who "control" any person liable under § 11. 15 USC § 77o.

misrepresentations and omissions in violation of the federal securities laws.[4] The plaintiffs allege the decline in sales was known at the time of the IPO and that the defendants failed to disclose this information. The plaintiffs allege that under § 11, the defendants are strictly liable for any material misrepresentations or omissions in the offering materials. They further allege the defendants breached their affirmative duty to provide adequate disclosures about risks, adverse conditions, and market uncertainties, thereby violating 17 CFR § 229.303 (a) (3) (ii). The plaintiffs contend their damages are traceable to the offering materials' allegedly false or misleading information pertaining to the quality and design of the Fuse system, the ability of EndoChoice's sales force to effectively market and sell the Fuse system, and the availability of the second generation Fuse system. The plaintiffs proposed a class of persons or entities who were damaged by purchasing or acquiring common stock pursuant or traceable to EndoChoice's June 5, 2015 IPO.

---

[4] The plaintiffs later abandoned their claims under § 12 (a) (2) of the Securities Act because they purchased their shares of EndoChoice stock subsequent to the IPO. See, e.g., *Wallace v. IntraLinks*, 302 FRD 310, 319 (SDNY 2014) ("aftermarket purchasers lack standing to maintain a Section 12 (a) (2) claim because[] the securities sale was not made to them by means of oral communication or prospectus").

The plaintiffs filed a motion for class certification on May 30, 2017. The trial court conducted a hearing on the motion on January 24, 2018. At the hearing, the parties stipulated that the putative class satisfied the numerosity requirement of OCGA § 9-11-23 (a) (1), the commonality requirement of OCGA § 9-11-23 (a) (2), and the superiority requirement of OCGA § 9-11-23 (b) (3). The trial court concluded that the plaintiffs satisfied the typicality, adequacy, and predominance requirements necessary to proceed on behalf of the proposed class.[5] The trial court limited the class to those who purchased shares of EndoChoice common stock prior to August 3, 2016.[6]

In reviewing a trial court's decision to certify a class, we are mindful that trial courts are

> vested with broad discretion to decide whether to certify a class, and absent an abuse of that discretion, we will not disturb the trial court's decision. Implicit in this deferential standard of review is a recognition of the fact-intensive basis of the certification inquiry and of the trial court's inherent power to manage and control pending litigation. Thus,

---

[5] On appeal, EndoChoice does not challenge the trial court's ruling that the plaintiffs satisfied the typicality requirement set forth in OCGA § 9-11-23 (a) (4).

[6] August 3, 2016 is 12 months after the effective date of the registration statement. See note 10, infra.

5

we will affirm the trial court's factual findings unless they are clearly erroneous. Under the clearly erroneous test, factual findings must be affirmed if supported by any evidence.

*Lewis v. Knology, Inc.*, 341 Ga. App. 86, 87 (799 SE2d 247) (2017) (citations and punctuation omitted). Moreover, "[t]he decision whether to certify a class depends in large part upon the description of the class, the claims raised and the evidence and arguments presented in support of class certification. Accordingly, we consider this case based upon the record before us[.]" *Roland v. Ford Motor Co.*, 288 Ga. App. 625, 632 (2) n. 7 (655 SE2d 259) (2007). Because OCGA § 9-11-23 is based on Rule 23 of the Federal Rules of Civil Procedure, it is appropriate that we look to federal cases interpreting that rule for guidance. *Lewis*, 341 Ga. App. at 90 (1) n. 7.

"In determining the propriety of a class action, the first issue to be resolved is not whether the plaintiffs have stated a cause of action or may ultimately prevail on the merits[,] but whether the requirements of OCGA § 9-11-23 (a) have been met." *Duffy v. The Landings Assn.*, 254 Ga. App. 506, 507 (1) (563 SE2d 174) (2002) (citation and punctuation omitted). That subsection requires plaintiffs to show:

> (1) numerosity–that the class is so numerous as to make it impracticable to bring all members before the court; (2) commonality–that there are questions of law and fact common to the class members which

predominate over any individual questions; (3) typicality–that the claim of the named plaintiff is typical of the claims of the class members; (4) adequacy of representation–that the named plaintiff will adequately represent the interest of the class; and (5) superiority–that a class action is superior to other methods of fairly and efficiently adjudicating the controversy.

*Carnett's, Inc. v. Hammond*, 279 Ga. 125, 126 (2) (610 SE2d 529) (2005) (punctuation omitted).

On appeal, the defendants[7] contend the trial court abused its discretion in certifying the class under OCGA § 9-11-23 (a) (4) (adequacy of representation) and OCGA § 9-11-23 (b) (3) (predominance). We find no abuse of discretion.

1. *Adequacy of Representation*

OCGA § 9-11-23 (a) (4) provides that one or more members of a class may sue as representatives of the class if "[t]he representative parties will fairly and adequately protect the interests of the class." The so-called "adequacy requirement is intended to protect the legal rights of absent class members." *Lewis*, 341 Ga. App.

---

[7] J.P. Morgan Securities, LLC, Merrill Lynch, Pierce, Fenner, & Smith, Inc., William Blair and Company, LLC, and Stifel, Nicolaus, & Company, Inc. adopted EndoChoice's appellate brief in its entirety, including the enumerations of error set forth therein.

at 90 (1). Thus, in assessing the adequacy of the class representatives, a trial court should examine whether the representatives' attorneys are experienced and competent in the legal issues involved. *Liberty Lending Svcs. v. Canada*, 293 Ga. App. 731, 739 (1) (c) (668 SE2d 3) (2008). Additionally, the court should ensure that the interests of the proposed representatives are not antagonistic to the interests of the proposed class. Id.

The defendants contend that the trial court abused its discretion in certifying the class, claiming that Bauer and Raczewski are not adequate representatives of the class under OCGA § 9-11-23 (a) (4) because: (A) they are not knowledgeable and involved participants in the litigation; and, (B) their abandonment of their claims under § 12 prejudiced absent class members. We find these arguments unpersuasive.

(A) Relying on our decision in *Lewis v. Knology*, EndoChoice argues that Bauer and Raczewski are inadequate representatives of the class because they have little knowledge of securities law and the underlying litigation is "lawyer-driven."[8] Put another way, the defendants contend that the named plaintiffs have little knowledge or understanding of the underlying claims, that their participation in the

---

[8] The defendants do not challenge the trial court's conclusion that the law firms and attorneys representing the plaintiffs are qualified, and do not challenge the finding of adequacy on this basis.

litigation has minimal or non-existent, and that they are serving merely as a tool to enable the plaintiffs' attorneys to pursue a class action. We disagree. In *Lewis*, the trial court denied the plaintiff's motion for class certification, finding that the plaintiff's participation in the litigation was so minimal as to constitute an abdication of the conduct of the case to her attorneys. Id. at 91 (1). To support its conclusion, the trial court noted that the plaintiff did not attend the class certification hearing, had not heard of the law firm representing her, and she was unaware that a lawsuit had been filed in Georgia on her behalf. Id. at 88-89. We affirmed the trial court's refusal to certify the class, deferring to the trial court's factual findings that the putative representative "was not an adequate class representative because she lack[ed] virtually any knowledge of the substance of the claims or the nature of the relief she [sought] and ha[d] yielded control entirely to her counsel." Id. at 91 (1). We found no abuse of discretion because the trial court conducted a "rigorous analysis," and that analysis was "supported by ample evidence in the record[.]" Id. at 94 (2).

Unlike *Lewis*, the trial court in the instant case specifically concluded that the plaintiffs "have demonstrated sufficient interest in and knowledge of the claims being asserted on behalf of the [p]roposed [c]lass." To support this finding, the trial court relied on the deposition testimony and affidavits of Raczewski and Bauer, which

9

demonstrated their knowledge of the case and their active participation in the current lawsuit. Raczewski testified as to his understanding of the nature of the claims, the reasons for suing the various defendants, and the potential relief available. Raczewski purchased his shares of EndoChoice stock before he knew of any potential litigation, and not at the behest of a law firm. He further testified that he researched his attorney before seeking representation, has been in communication with his attorneys on a regular basis through the course of litigation, and has read and reviewed many of the pleadings in this case. Similarly, Bauer purchased EndoChoice stock after researching the company, and looked into retaining counsel as stock prices fell. Bauer maintained communication with his counsel and kept himself abreast of developments in the litigation.

Additionally, the record shows that Raczewski traveled from Connecticut to attend the class certification hearing in Fulton County. Although Bauer, a resident of Texas, did not attend the class certification hearing, the trial court noted that the hearing was originally scheduled for January 17, 2018, but, due to inclement weather, was rescheduled to January 24, 2018. This testimony and evidence demonstrate that Raczewski and Bauer have sufficient knowledge and understanding of the claims, and they have each shown a sufficient degree of participation in the litigation such that

10

the trial court did not abuse its discretion in finding them to be adequate class representatives.

(B) The trial court also rejected the defendants' argument that the plaintiffs' abandonment of their § 12 claims rendered them inadequate representatives. The defendants' challenge this finding on appeal. Specifically, the defendants contend that the abandonment of these §12 claims prejudiced absent class members based on the expiration of the applicable statute of limitation, rendering Bauer and Raczewski inadequate representatives.[9] Again, we disagree.

As an initial matter, § 12 claims are only available to individuals or entities who purchased shares directly in an IPO. *Gustafson v. Alloyd Co., Inc.*, 513 U. S. 561, 571 (II) (A) (115 SCt 1061, 131 LEd2d 1) (1995). Upon discovery that their purchases were not made directly in the IPO, the plaintiffs abandoned their § 12 claims. It has long been held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class" while the action remains pending on behalf of the class. *American Pipe & Constr. Co. v. Utah*, 414 U. S. 538, 554 (II) (94 SCt 756, 38 LEd2d 713) (1974). Because of this tolling,

---

[9] Section 12 claims must be brought within one year of the discovery of the untrue statement or omission. See 15 USC § 77m.

11

at the time the plaintiffs abandoned their § 12 claims on May 30, 2017, the statute of limitations had not run, and potential class members who wished to pursue claims under § 12 (a) (2) would have had the option of opting out of the class and pursuing such claims individually. OCGA § 9-11-23 (c) (2). Additionally, there is no evidence in the record that any potential § 12 claimants have come forward, or that any putative class members with standing to bring such claims would be willing to represent the class. Moreover, the defendants have failed to show that the plaintiffs' abandonment of their § 12 (a) (2) claims renders them inadequate to pursue §§ 11 and 15 claims on behalf of the class.

In light of the foregoing, we find no abuse of discretion in the trial court's ruling that Bauer and Raczewski are adequate representatives of the class.

2. *Predominance*

In addition to the requirements of OCGA § 9-11-23 (a), putative class representatives must satisfy at least one of the requirements set forth in OCGA § 9-11-23 (b). *Bickerstaff v. Suntrust Bank*, 299 Ga. 459, 461-462 (788 SE2d 787) (2016). In relevant part, OCGA § 9-11-23 (b) (3) provides that a class action may be maintained if "[t]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual

12

members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The defendants assert that the trial court abused its discretion in concluding that the plaintiffs satisfied this predominance requirement. The defendants' argument is based on the fact that § 11 provides an affirmative defense, known as the "investor knowledge" defense. Under the investor knowledge defense, a seller can avoid liability by showing that a particular purchaser knew of the untruth or omission contained in the offering materials. 15 USC § 77k (a). See *Kosmos Energy Ltd. Securities Litigation*, 299 FRD 133, 152 (IV) (B) (3) (ND Tex. 2014) ("Under the investor knowledge defense, claims brought pursuant to § 11 of the 1933 Act will not succeed where a defendant shows that 'the plaintiff knew of the untruth or omission at the time of his or her acquisition of the security.'") (footnote and citation omitted). Here, the defendants contend that, because individualized inquiries pertaining to this affirmative defense cannot be determined on a class-wide basis, the plaintiffs failed to show that common issues would predominate over individual inquiries, and the trial court abused its discretion in certifying the class. We discern no error.

In considering whether common questions will predominate, we look to the specific claims asserted. See *MCG Health, Inc. v. Perry*, 326 Ga. App. 833, 836 (1)

13

(755 SE2d 341) (2014) ("[s]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question") (citation and punctuation omitted). To state a prima facie claim for a § 11 violation, a plaintiff is required to establish that (1) he purchased a registered security either from an issuer or in the aftermarket; (2) the defendant participated in the offering in a manner sufficient to give rise to liability under § 11; and (3) the registration statement contained material misstatements or omissions. *In re Morgan Stanley Information Fund Securities Litigation*, 592 F3d 347, 359 (2nd Cir. 2010). "Liability against the issuer of a security is virtually absolute, even for innocent misstatements." *Herman & MacLean v. Huddleston*, 459 U. S. 375, 382 (II) (103 SCt 683, 74 LEd2d 548) (1983) (footnote omitted). Therefore, § 11 creates a presumption that any person acquiring a security pursuant to that section relied on the defective registration statement and "was legally harmed by the defective registration statement." *APA Excelsior III, LP v. Premiere Technologies, Inc.*, 476 F3d 1261, 1271 (11th Cir. 2007).[10] Section 15 is essentially derivative of § 11 claims, and provides secondary

---

[10] The presumption of reliance no longer applies to persons who acquired the security after the issuer made generally available an earning statement covering a period of at least 12 months beginning after the effective date of the registration statement. 15 USC § 77k (a). Thereafter, a purchaser seeking relief under § 11 must show both that the registration statement was deficient and that he relied on the

14

liability for persons who control any person liable under § 11. 15 USC § 77o. Given the parameters for establishing a prima facie claim under § 11, we have previously noted that "actions on behalf of defrauded securities purchasers present a particularly desirable situation for a class action." *Sta-Power Indus., Inc. v. Avant*, 134 Ga. App. 952, 954 (1) (216 SE2d 897) (1975). In other words, because all § 11 claims are based on an alleged misstatement in the offering materials, the question of whether those materials in fact contained a misstatement usually predominates.

To prove that common questions did not predominate, the defendants were required to submit evidence sufficient to show "the existence of individual investor knowledge sufficient to preclude a finding by the [c]ourt that common liability issues predominate over individual knowledge issues." *In re Kosmos*, 299 FRD at 152 (IV) (B) (3) (citation and punctuation omitted). The defendants, however, did not produce any evidence of individual investor knowledge. Instead, they argued that investor knowledge of the alleged misstatements or omissions could be imputed from the series of earnings calls and public disclosures issued by EndoChoice and

deficient statement. Id. Here, the defendants filed a series of documents with the SEC on August 3, 2016, triggering the reliance requirement found in § 11. Accordingly, the trial court limited temporally the class to only those individuals or entities who purchased EndoChoice stock prior to August 3, 2016.

disseminated by outlets such as Bloomberg. The trial court conducted a thorough analysis of the evidence of the availability of the public "corrective" disclosures. Further, the court compared the statements of EndoChoice board members to the allegations in the complaint and determined that the discrepancies in the statements and the facts known to the defendants rendered the statements misleading. The trial court's finding of insufficient evidence of individual investor knowledge is not clearly erroneous.

With respect to common questions, it is undisputed that the defendants issued the offering materials, and the claims arise out of the same offering materials. The common questions in this case include whether the defendants were aware prior to the IPO that sales of its Fuse system were declining, whether this information was material, and whether the defendants disclosed this decline to all class members. Other common issues include an analysis of the contents of the offering materials and whether those materials contained material misstatements or omissions. See *APA Excelsior*, 476 F3d at 1271. Thus, the common legal issues of whether EndoChoice's offering materials contained material misstatements or omissions will predominate over the question of whether some investors may have had knowledge of corrective disclosures.

16

Therefore, we conclude that the trial court did not err in ruling that individual considerations do not predominate over those relevant to the entire class. Accordingly, the trial court did not abuse its discretion in concluding that the plaintiffs satisfied the predominance requirement of OCGA § 9-11-23 (b) (3). See *In re IndyMac Mortg.-Backed Securities Litigation*, 286 FRD 226, 238-240 (III) (A) (2) (i) (SDNY 2012) (class certification will be upheld if the question of investor knowledge does not predominate over the common issues).

For the foregoing reasons, we affirm the trial court's order granting class certification.

*Judgment affirmed. Dillard, C. J., and Hodges, J., concur*.