**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**MCMILLIAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 16, 2019**

# In the Court of Appeals of Georgia

A19A1310. CITY OF ROSWELL v. BIBLE et al.

McMILLIAN, Presiding Judge.

In August 2017, David Bible and Brian Rogers (collectively "Appellees") filed suit against the City of Roswell (the "City"), seeking to represent a class of similarly situated firefighters on various claims arising from the City's classification of the putative class members as part-time rather than full-time employees, thereby depriving them of full-time benefits under the City's "Policy Manual." Following discovery limited to the issue of class certification, the trial court entered an order certifying the proposed class. On appeal, the City asserts that the trial court erred by (1) relying on the Appellees' unsupported allegations; (2) finding that class issues predominate; (3) finding that Appellees met their burden of proof as to numerosity;

and (4) finding that Appellees satisfy the typicality requirement. For the reasons that follow, we find no error and affirm.

The record shows that the City has a population of nearly 100,000 and employed over 100 firefighters each year during the class period.[1] In 2000, the City converted from a system of employing mostly full-time firefighters – with some reliance on volunteer firefighters – to a system of employing a significant number of "part-time" firefighters who are not entitled to the same benefits as full-time City employees.[2] Bible worked at the Roswell Fire Department (the "Department") in various capacities, including as a firefighter, fire lieutenant, fire captain, and emergency medical technician, from 1992 until his retirement in March 2017. Rogers worked at the Department from 2007 to 2018 as a firefighter, a fire captain, and a

---

[1] The class period spans August 29, 2011 through August 29, 2017.

[2] Appellees allege the City converted to this system in order to cut approximately $8 million from its budget.

paramedic.[3] All City employees, including the putative class members, are subject to the provisions of the City's Policy Manual.[4]

City Ordinance 2.2.1 defines "regular" employees as those who work "full-time whether salary is hourly, weekly or some other pay rate," whereas part-time employees are those who "work at irregular intervals on a short-term basis." Section 3.8 of the Policy Manual further specifies that "[a]n employee whose standard workweek is forty hours or more is a regular full-time employee. An employee whose standard workweek is less than forty hours per week is a part-time employee." And finally, the Policy Manual provides that "[a] person appointed to a part-time position shall not be eligible for the privileges and benefits conferred through the [Policy Manual] to regular full-time City employees."[5]

---

[3] Rogers was terminated shortly after he provided deposition testimony in this case. Two weeks later, class plaintiffs Willey McCluskey and Ronnie Harper withdrew from the case.

[4] City Ordinance 2.2.2 provides that "[t]he employment practices of the City of Roswell shall be set forth in a document known as the City of Roswell Personnel Manual." Ordinance 2.2.4 further provides that "[e]ligibility for benefits and the cost to employees shall be specified in the personnel manual."

[5] The benefits enjoyed by full-time employees include retirement benefits, holiday pay, paid time off, and paid sick leave.

3

Appellees allege that for each year during the class period, they worked forty hours or more per standard workweek "virtually every week." And they both testified at their depositions that they believed throughout their employment with the City that they were considered part-time employees and were therefore not eligible for most of the benefits available to full-time employees. In 2016, Rogers asked the City's benefits manager about participating in the City's retirement plan, and she told Rogers that he should do some research about how part-time employees are treated in other jurisdictions. Approximately one year later, Appellees filed their complaint against the City, asserting claims for breach of contract, breach of duty of good faith and fair dealing, quantum meruit, declaratory judgment, and attorney fees.

The trial court directed the parties to engage in discovery limited to the issue of class certification, and in June 2018, Appellees filed a motion to certify a class of similarly situated firefighters as follows:

> All persons currently and/or formerly employed as firefighters by the Roswell Fire Department between August 29, 2011 and the date of the filing of the Complaint (inclusive), who worked forty (40) hours or more per standard workweek, but did not receive the benefits conferred upon regular full-time employees.

The City opposed the motion and moved to strike Rogers' and Bible's declarations and to suppress a former plaintiff's deposition errata sheet. In its order granting class certification for the proposed class, the trial court found that the estimated 149 class members' claims arise out of a single contract -- the Policy Manual -- and were confined to a limited time period of August 29, 2011 to August 29, 2017. The trial court ultimately concluded that the Appellees had satisfied each of the class certification requirements under OCGA § 9-11-23 (a) and that class issues predominate over the issues of any individual class members. This appeal followed.

1. In its first enumeration of error, the City simply asserts that the Appellees failed to meet their burden of proof in establishing class certification – without specifying which factor(s) the Appellees failed to establish – because the trial court improperly relied on the Appellees' unsworn allegations in their complaint and other assertions outside their personal knowledge for "key factual propositions," including the allegations about the City and the Department's benefits practices and the number of hours worked by Appellees and other class members.

We begin by noting that "[i]n determining the propriety of a class action, the first issue to be resolved is not whether the plaintiffs have stated a cause of action or may ultimately prevail on the merits, but whether the requirements of OCGA § 9-11-

23 (a) have been met." (Citation and punctuation omitted.) *Endochoice Holdings, Inc. v. Raczewski*, __ Ga. App. __, (830 SE2d 597) (2019). Trial courts are "vested with broad discretion to decide whether to certify a class, and absent an abuse of that discretion, we will not disturb the trial court's decision." (Citation and punctuation omitted.) Id. at ___ ("Implicit in this deferential standard of review is a recognition of the fact-intensive basis of the certification inquiry and of the trial court's inherent power to manage and control pending litigation."). And "we will affirm the trial court's factual findings unless they are clearly erroneous." (Citation and punctuation omitted.) Id. at ___

In order to certify a class, the trial court must find:

(1) [t]he class is so numerous that joinder of all members is impracticable;

(2) [t]here are questions of law or fact common to the class;

(3) [t]he claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) [t]he representative parties will fairly and adequately protect the interests of the class.

OCGA § 9-11-23 (a). In addition, the trial court must determine that at least one ground included in OCGA § 9-11-23 (b) is satisfied. See *SunTrust Bank v. Bickerstaff*, 349 Ga. App. 794, 801 (2) (824 SE2d 717) (2019). Pertinent to this case, OCGA § 9-11-23 (b) (3) provides that a class action may be maintained if the trial court "finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The City is correct that the Appellees, as the class proponents, bear the burden of proving that class certification is appropriate. See *Georgia-Pacific Consumer Prods., LP v. Ratner*, 295 Ga. 524, 526 (1) (762 SE2d 419) (2014). And, in doing so, they are required "to come forward with evidence to prove their satisfaction of the statutory requirements." Id. But see also *City of Rome v. Hotels.com, LP*, No. 4:05-CV-249-HLM, 2011 U.S. Dist. LEXIS 158580, at *21 (N.D. Ga., March 21, 2011) (rules of evidence are not strictly enforced at the class certification stage because of the preliminary nature of the proceedings); *Fischer v. Ciba Specialty Chems. Corp.*, 238 FRD 273, 279 (II) (A) (1) (S.D. Ala. 2006) ("Courts confronted with Rule 23

7

issues may consider evidence that may not ultimately be admissible at trial.").[6] With these principles in mind, we will turn to the City's specific arguments regarding the Appellees' failure to establish that their claims are entitled to class treatment.

2. In its second enumeration of error, the City asserts that the Appellees cannot establish that common issues predominate over individual issues.

"The Rule 23 (b) (3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Brenntag Mid South, Inc. v. Smart*, 308 Ga. App. 899, 906 (2) (b) (i) (710 SE2d 569) (2011). Class plaintiffs "may satisfy this requirement by showing that issues subject to class-wide proof predominate over issues requiring proof that is unique to the individual class members." Id. "In considering whether common questions will predominate, we look to the specific claims asserted." *Raczewski*, __ Ga. App. at ___.

Here, the trial court found that there is a single contract that applies only to City employees and that within that single document the plaintiffs are challenging only those provisions regarding benefits to full-time employees. Thus, where each of the class members' claims arise out of identical terms in the Policy Manual and each

---

[6] We look to federal cases interpreting Rule 23 of the Federal Rules of Procedure, the rule upon which OCGA § 9-11-23 was based, for guidance. *American Debt Foundation, Inc. v. Hodzic*, 312 Ga. App. 806, 808 (720 SE2d 283) (2011).

of their claims are brought under the same causes of action, the issue of the City's contractual liability will be determined on a class-wide basis. And we have previously held that similar claims arising from the breach of a single contract present a classic case for treatment as a class action. See, e.g., *Unum Life Ins. Co. of America v. Crutchfield*, 256 Ga. App. 582, 583 (568 SE2d 767) (2002) ("Georgia case law provides that common questions of law and fact predominate when an action is brought on behalf of purchasers of agreements from a common source, the character of the right to be enforced is common, and common relief is sought.") (citations and punctuation omitted). See also *Venerus v. Avis Budget Car Rental, LLC*, 723 F. App'x 807, 815 (2) (11th Cir. 2018) ("form contracts are ideal for class treatment").

The City argues, however, that the Appellees worked for years without challenging their non-benefitted status and that this action therefore involves "highly individualized questions of waiver."[7] Although Georgia law recognizes that a party

---

[7] The City also asserts that the Appellees' quantum meruit claim will require a highly individualized inquiry. We first question whether the quantum meruit claim in this case – arising from a single class of City firefighters over a specific period of time – would in fact require such a highly individualized inquiry that it would predominate over the issues common to the class. See *In re Scientific-Atlanta, Inc. Securities Litigation*, 571 F. Supp. 2d 1315, 1342 (II) (A) (2) (N.D. Ga. 2007) ("The mere fact that damages may have to be calculated on an individualized basis does not necessarily establish that individual issues predominate."). Moreover, it is clear that this claim was pleaded in the alternative to the breach of contract claim. Thus, if the

9

to a contract may waive contractual provisions for his benefit, "waiver is not favored under the law," and "the evidence relied upon to prove a waiver must be so clearly indicative of an intent to relinquish a then known particular right or benefit as to exclude any other reasonable explanation." (Citation omitted.) *Greenberg Farrow Architecture, Inc. v. JMLS 1422, LLC*, 339 Ga. App. 325, 331 (2) (791 SE2d 635) (2016). "One cannot intentionally waive a right one does not know exists." Id. at 333 (2).

However, we need not resolve the issue of waiver at this juncture because "merit-based disputes are not ripe for resolution at the class certification stage, particularly where no dispositive motions have been filed, argued, or ruled on below, and merits discovery has not concluded."[8] *Village Auto Inc. Co. v. Rush*, 286 Ga. App. 688, 692 (2) (649 SE2d 862) (2007). Moreover, "where corporate policies

---

class is successful on its primary claim, it will not proceed to the recovery of damages on the quantum meruit claim. "It has long been the law in Geogia that although a party may plead in alternative counts, no recovery may be had in quantum meruit when a contract governs all claimed rights and responsibilities of the parties." (Citation and punctuation omitted.) *Graybill v. Attaway Constr. & Assoc.*, 341 Ga. App. 805, 811-12 (3) (802 SE2d 91) (2017).

[8] We note that where a contract is divisible, such as where services are accepted by successive performances, the statute of limitation runs separately as to each payment when it becomes due. See *Teachers Retirement System v. Plymel*, 296 Ga. App. 839, 845 (2) (676 SE2d 234) (2009).

10

constitute the very heart of the plaintiffs' claims, as they do here, common issues will predominate because those policies would necessarily have to be re-proven by every plaintiff." (Citations and punctuation omitted.) *In re Checking Account Overdraft Litigation*, 286 FRD 645, 656 (III) (C) (1) (S.D. Fla. 2012). Thus, even where "a defense may arise and may affect different class members differently, this occurrence does not compel a finding that individual issues predominate over common ones. So long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class certification." (Citation omitted.) *Fortis Ins. Co. v. Kahn*, 299 Ga. App. 319, 324 (2) (b) (683 SE2d 4) (2009). See also *In re Checking Account Overdraft Litigation*, 286 FRD at 656 (III) (C) (1) (unique affirmative defenses will rarely predominate where a common course of conduct is established).

Accordingly, the trial court did not abuse its discretion in finding that individual considerations do not predominate over those relevant to the entire class.[9]

3. The City next asserts that the Appellees failed to meet their burden to prove numerosity.

---

[9] The City essentially concedes that if predominance is met in this case, then the additional requirement of superiority under OCGA § 9-11-23 (b) (3) would also be satisfied. Therefore, we will not separately address superiority.

11

Under Georgia law, there is no minimum number of class members required to meet the requirements of OCGA § 9-11-23 (a) (1). *The Medical Center, Inc. v. Bowden*, 348 Ga. App. 165, 174 (2) (a) (820 SE2d 289) (2018) (if after further discovery it becomes clear that fewer persons than initially anticipated constitute the class, the trial court can modify or de-certify the class as may be necessary) (physical precedent only). However, "impracticability of joinder is generally presumed if the class includes more than 40 members." *American Debt Foundation, Inc. v. Hodzic*, 312 Ga. App. 806, 809 (1) (720 SE2d 283) (2011). And "[p]arties seeking class certification do not need to know the precise number of class members but they must make reasonable estimates with support as to the size of the proposed class." (Citation and punctuation omitted.) *In re Checking Account Overdraft Litigation*, 286 FRD at 651 (III) (B) (1) (generally less than 21 is inadequate, more than 40 is sufficient). See also *Smart*, 308 Ga. App. at 903 (2) (a) (i) (plaintiffs need not allege exact number and identity of class members; they need only establish that joinder is impracticable "through some evidence or reasonable estimate of the number of purported class members") (citation and punctuation omitted).

Although the City's argument is not entirely clear on appeal, it appears that in contesting numerosity below, the City did not actually dispute the fact that the

12

proposed class would exceed the general threshold for numerosity. Rather, the City disputed the Appellees' reliance on the Policy Manual's definition of full-time, i.e., "[a]n employee whose standard workweek is forty hours or more."[10] In any event, documents produced by the City during discovery provided the names and work hours of potential class members during the relevant time period.[11] "Case law is clear that there is no requirement that every classmember, other than the named plaintiffs, be identified at the outset of the litigation. Instead, a class definition is necessary only to establish that the class does, in fact, exist and that its members will be identifiable." (Citation and punctuation omitted.) *Campos v. ChoicePoint, Inc.*, 237 FRD 478, 488 (II) (D) (1) (N.D. Ga. 2006).

Based on our review of the City's own records, we find the trial court did not abuse its discretion in finding that the Appellees satisfied the numerosity requirement. Accordingly, this enumeration of error provides no basis for reversal.

---

[10] The City argued that in order to be considered a full-time employee, the employee should have worked 2,080 hours each year (a number that would require the employee to work 40 hours per week for each of the 52 weeks per year). However, even under the City's proposed definition, the Appellees maintained that the class would include 86 members.

[11] These documents were filed as exhibits to the City's opposition to the Appellees' motion to certify.

4. And lastly, the City asserts that the Appellees' claims are not typical of the class. "The typicality test centers on whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named class plaintiffs, and whether other class members have been injured by the same course of conduct." (Citation and punctuation omitted.) *In re Checking Account Overdraft Litigation*, 286 FRD at 653 (III) (B) (3). This test is not demanding and is satisfied "if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." (Citation and punctuation omitted.) *Ault v. Walt Disney World Co.*, 692 F3d 1212, 1216 (III) (11th Cir. 2012). See also *Bowden*, 348 Ga. App. at 179 (2) (c) (sufficient nexus is established if claims or defenses of the class and class representatives arise from the same event or pattern or practice and are based on same legal theory).

The City alleges that because Bible and Rogers acquiesced in their non-benefitted status and worked over 2,080 hours per year, they are not typical of other class members who did not waive their entitlement to any benefits or those who worked less than 2,080 hours per year. However, it is clear that Appellees' breach of contract claims, arising from the City's denial of full-time employment benefits, are virtually identical to the claims of each proposed class member. And for the reasons

14

discussed in Division 2, we need not reach the merits of the City's waiver defense at this juncture. Finally, with respect to the number of hours worked, we are not persuaded that any numerical difference between the amount of hours worked by Rogers and Bible and the remaining class members – assuming the class members otherwise meet the class definition – defeats a finding of typicality. See *Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Financial Corp.*, 762 F3d 1248,1260 (V) (11th Cir. 2014) ("The typicality requirement may be satisfied despite substantial factual differences when there is a strong similarity of legal theories.") (citation and punctuation omitted). Accordingly, this enumeration of error provides no basis for reversal.

*Judgment affirmed. McFadden, C. J., and Senior Appellate Judge Herbert E. Phipps concur.*