A06A2002. J. E. BLACK CONSTRUCTION COMPANY, INC. v. FERGUSON ENTERPRISES, INC.
(643 SE2d 852)

BARNES, Chief Judge.

J. E. Black Construction Company, Inc., which is the corporate entity of Joey Black (Black), sued plumbing supplier Ferguson Enterprises, Inc., plumbing contractor Bessco Construction Company, Inc. and Bessco's two principal owners, David White and Clayton Lewis, contending that they were liable to him for fraud and negligent misrepresentation. Ferguson moved for summary judgment, and the trial court granted the motion.[1] Black appeals, arguing that the trial court erred in finding no evidence of reasonable reliance. For the reasons that follow, we affirm.

The contracts between Bessco and Black set fixed prices for labor and material to install plumbing systems, and further provided that "[w]ater heaters, fixtures and hook-up materials supplied by us will be invoiced at actual cost plus 10% handling plus 6% sales tax." Black alleged that Bessco did not charge him its actual cost, but rather charged him a higher amount which it supported with faxed copies of price quotes from Ferguson. Black also alleged that Ferguson was liable to him for damages on three different houses because it supplied price quotes for the fixtures in those houses that did not show Bessco's actual cost. Ferguson does not deny that it provided these higher price quotes to Bessco, but argues that doing so was common procedure in its business.

Black began working with White in 1986 or 1987. Black is familiar with the process of getting quotes and sending invoices and knows the difference between the two types of documents. Typically on a cost-plus contract, the subcontractor supplies the general contractor with invoices. He testified that he thought Bessco had been charging him whatever Bessco paid, plus ten percent, but found out differently through a conversation with Ferguson's showroom consultant. In an affidavit, he said that the consultant told him "Bessco had asked for the second quotes showing higher prices and that she knew it was wrong." In his deposition, he testified that the showroom

---

[1] The case remains pending against Bessco and its owners.

manager told him that Ferguson sent Bessco "make-up fake quotes, fabricated quotes, quotes with things they didn't even buy from them." After reviewing his papers, he thought Bessco had overcharged him about $80,000 on four projects. He thought Ferguson was liable for some of those overcharges because it produced documents showing prices that exceeded Bessco's costs, which Bessco then used to bill him. Black also admitted that none of the documents that Bessco attached to its bills were invoices to Bessco from Ferguson, but were all quotes from Ferguson showing Black Construction Company as the customer.

Ferguson's general manager testified that contractors asked for different price lists all the time, such as one showing its cost on account and another showing retail costs. If a customer asked for a price quote, the company gave it to him. Most contractors marked up the prices, and the price the general contractor paid to the subcontractor for goods the subcontractor bought from Ferguson was not Ferguson's concern. The actual purchase price would be on the invoice, and a bid is not an invoice. He reiterated that the documents attached to Bessco's invoices from Ferguson are titled "Price Quotation" and named Black Construction Company as the customer. Ferguson's showroom consultant testified that the company priced its fixtures depending on the customer's volume of sales and how the account was set up by the home office when it processed the customer's credit application. In fact, Ferguson had at least 15 different price scales. A contractor that did a larger volume of business would receive a deeper discount, for example, than a consumer who walked in off the street. Black did not have an account with Ferguson, so when his homeowner came in to pick out fixtures, Black told the showroom consultant that the charges would be processed through Bessco's account. Black said, "I have an agreement with them and I will pay them their markup, something to that [effect]," the consultant testified. Black told the consultant to give the homeowner the price Black would pay for the fixtures because that is the amount he would pay Bessco. She testified that if Bessco wanted a quote at Black's prices, she would fax it to Bessco and whatever the company did with that fax was none of her business. When asked if a request for multiple quotes at different prices would "raise a red flag" in her mind, she replied,

> We don't get into contracts. We don't negotiate people's buying. . . . I mean I don't call people and say, what's your actual — what's your contract with this builder or that builder or plumber. I don't — I sell a product. They can buy it or they cannot buy it. They can take my invoice after they

buy it from me and they can mark it up a hundred percent, that's not my business. I don't care how much money they make.

She knew that the fixtures' cost would be marked up to someone, whether to Black or to Black's buyer, and providing the different quotes was a regular part of her business. She adamantly denied ever having invoiced two people for the same thing, or "double invoicing."

One of Bessco's principals, White, testified that the company's long-standing agreement with Black was that he would pay "contractor's price," which was the amount Black would have paid for the items, plus an additional ten percent. "Actual cost" meant Black's cost, not Bessco's invoice cost. White testified that he asked Ferguson many times to add only ten percent to Bessco's costs in producing these final quotes, which was less than Ferguson's normal markup to Black would have been. When Bessco finished working on a house, White would call Ferguson and ask for a "clean quote" at Black's prices and at Bessco's prices because sometimes Black or the homeowner changed their minds about items during the building process. Ferguson knew White needed the quotes to assist with his invoicing, but did not necessarily know specifically what the documents were for.

On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Preferred Real Estate Equities v. Housing Systems*, 248 Ga. App. 745 (548 SE2d 646) (2001).

1. The elements of fraud are "a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." (Citation, punctuation and footnote omitted.) *Johnston v. Correale*, 272 Ga. App. 502, 504 (2) (612 SE2d 829) (2005). Once a movant has pointed to an absence of evidence in the record sufficient to create a jury issue on at least one essential element of the plaintiff's case, "[the respondent] must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." *Speir v. Krieger*, 235 Ga. App. 392, 397 (2) (509 SE2d 684) (1998).

The trial court concluded that the record contained some evidence of the first two elements of a false representation and scienter, but no evidence of justifiable reliance or of Ferguson's intention to induce Black to act or not act. Black argues on appeal only that the trial court erred in finding that he presented no evidence showing he reasonably relied on Ferguson's false quotes. He contends that he

established his reliance by showing that he paid Bessco's bills, which were supported with Ferguson's quotes, and that this evidence is sufficient to create a jury question.

The trial court relied on Black's affidavit — that Ferguson's employee told him she knew the double quotes were "wrong" — to find a jury issue on false representation and scienter. The trial court declined to consider whether Black's deposition testimony contradicted his affidavit because the court thought the deposition had not been filed. While it appears that the deposition had been filed, we need not consider this issue because if evidence is missing as to any element, summary judgment is proper. *Copeland v. Home Savings of America*, 209 Ga. App. 173, 174 (433 SE2d 327) (1993).

In this case, regardless of whether he could show any evidence regarding the other four elements of fraud, Black has presented no evidence that Ferguson intended to induce him to act or refrain from acting. Ferguson's general manager and showroom consultant both testified that the company did not know what Bessco did with its price quotes because it was not their business to know or care what kind of agreement the contractor had with his subcontractors. Markups are common in the industry between contractors, subcontractors, and customers. Ferguson had already sold the product and produced the price quotes for Bessco merely as a customer service, which were clearly labeled as quotes to Black, not invoices to Bessco. The trial court did not err in granting summary judgment on Black's fraud claim against Ferguson. *Buford-Clairmont Co. v. Cato Corp.*, 241 Ga. App. 50, 53 (2) (526 SE2d 104) (1999).

2. The trial court also granted summary judgment on Black's claims of negligent misrepresentation. The essential elements are "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." (Footnote omitted.) *Hardaway Co. v. Parsons, Brinckerhoff &c.*, 267 Ga. 424, 426 (1) (479 SE2d 727) (1997). In this case, Black has shown neither reasonable reliance nor economic injury. Focusing on the economic injury element, while Black testified that the price quote was higher for him than for Bessco, he presented no evidence that he could have otherwise obtained the material for less money than the amount he paid Bessco. Indeed, the evidence was to the contrary, that Black would have had to pay cash at the higher price because he did not have an open account. Accordingly, the trial court did not err in granting summary judgment to Ferguson on Black's negligent misrepresentation claim. See *Newitt v. First Union Nat. Bank*, 270 Ga. App. 538, 546-547 (5) (607 SE2d 188) (2004).

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED MARCH 20, 2007.

*Ronald C. Berry*, for appellant.

*Portman & Raley, Charles H. Raley, Jr., McCorkle, Pedigo & Johnson, David H. Johnson*, for appellee.