**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 20, 2019**

# In the Court of Appeals of Georgia

A19A0848. CLOUTHIER v. THE MEDICAL CENTER OF
CENTRAL GEORGIA, INC.

MILLER, Presiding Judge.

After Francis Clouthier was involved in a tractor-trailer accident, The Medical Center of Central Georgia, Inc. ("MCCG") placed a lien on his causes of action. In response, Clouthier filed a putative class action against MCCG challenging the lien and raising numerous claims for damages. Clouthier appeals from the trial court's order granting MCCG's motion to dismiss his complaint, arguing that he pled viable claims for fraud, negligent misrepresentation, and violations of Georgia's Racketeering Influenced and Corrupt Organizations ("RICO") Act. After a careful examination of Clouthier's complaint, we determine that the trial court erred in dismissing the complaint. Therefore, we reverse.

We review a trial court's ruling on a motion to dismiss de novo. *Roberts v. JP Morgan Chase Bank, Nat. Assn.*, 342 Ga. App. 73 (802 SE2d 880) (2017).

> A trial court should not grant a motion to dismiss for failure to state a claim upon which relief may be granted unless: (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor. In other words, a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.

(Citation omitted.) *Ikomoni v. Bank of America*, *N.A.*, 330 Ga. App. 776, 776-777 (769 SE2d 527) (2015). We emphasize that we are at the motion-to-dismiss stage, prior to the completion of discovery, and we are not considering whether Clouthier's claims will ultimately prove meritorious or the likelihood that Clouthier will indeed be able to introduce evidence to support his claims. "If, within the framework of the complaint, evidence *may* be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient. (Citation omitted; emphasis supplied.) Id. at 777.

2

Thus, "it is the rare case in which a motion to dismiss for failure to state a claim, as opposed to a motion for summary judgment, will provide an appropriate procedural device for securing summary adjudication of the issues raised in a complaint . . . ." (Citation omitted.) *Radio Perry, Inc. v. Cox Communications, Inc.*, 323 Ga. App. 604, 611 (1) (b) (746 SE2d 670) (2013). Mindful of these principles, we turn to Clouthier's complaint.

According to his complaint, Clouthier was injured in a tractor-trailer collision in August 2016, and an ambulance transported him to MCCG's emergency room for treatment. After his discharge from the hospital, MCCG became aware that Clouthier's injuries were caused by third parties, and in November 2016, MCCG filed a hospital lien against Clouthier's causes of action, in the amount of $56,856.89. Specifically, the lien affidavit stated that MCCG "claims a lien upon any and all causes of action accruing to [Clouthier] on account of injuries giving rise to such causes of action and that necessitated hospital care." The affidavit also stated that the lien was claimed "as provided for in the Official Code of Georgia Annotated, Section 44-14-470 et seq."

Clouthier reached a "confidential" settlement in his collision case

3

and then filed a complaint and petition for class action against MCCG in the Bibb County State Court. Clouthier alleged that MCCG's lien and charges were for the "full chargemaster rate" or "sticker price" of his medical procedures, "which [did] not represent a reasonable charge for the treatment received." Clouthier claimed that MCCG knew that the lien amount was not reasonable, and he raised claims of fraud, negligent misrepresentation, and violations of the RICO Act.[1] Clouthier further requested punitive damages, an award of attorney fees, and class certification as to all similarly situated plaintiffs.

MCCG filed a motion to dismiss the complaint for failure to state a claim. MCCG contended that the Bibb County State Court lacked subject matter jurisdiction over Clouthier's complaint because Clouthier's lawsuit was essentially a request for equitable relief. MCCG also argued that the lien did not convey any false information.

Following a hearing, the trial court granted MCCG's motion to dismiss. The trial court first determined that it had jurisdiction because Clouthier sought an award of damages. Regarding Clouthier's claims for fraud, negligent misrepresentation, and

---

[1] Clouthier also raised claims of unjust enrichment, unconscionability, and/or breach of contract, which the trial court determined were not pleaded as substantive claims for relief. Clouthier does not raise the dismissal of these claims before this Court.

4

violations of the RICO Act, the trial court found that they all required a "false swearing" or "negligent misrepresentation" by MCCG as to the reasonableness of its charges. The trial court reasoned that the language of the lien affidavit did not show that MCCG ever swore that the lien amount was reasonable and that MCCG therefore never made a false statement.[2] After the trial court issued a certificate of immediate review, this Court granted Clouthier's application for interlocutory appeal, and this appeal followed.

1. First, Clouthier contends that the trial court erred in dismissing his claims for fraud and negligent misrepresentation on the basis that MCCG never made a false statement or negligent misrepresentation. We agree.

"Georgia law gives a hospital a lien for the reasonable charges for its care and treatment of an injured person against all causes of action accruing to that person on account of [his] injuries, and establishes a process for the hospital to perfect its lien for the amount claimed to be due." *Bowden v. Med. Center, Inc.*, 297 Ga. 285 (773 SE2d 692) (2015). See OCGA § 44-14-470 (b) (explaining that the hospital "shall have a lien for the reasonable charges"). In order to perfect the lien, the hospital must

---

[2] The trial court noted that the parties still had the opportunity to litigate the validity and amount of the hospital lien, as MCCG counterclaimed to recover on the lien.

5

provide written notice to the patient, and must also file "a verified statement" setting forth "the amount claimed to be due" for the hospital. OCGA § 44-14-471 (a) (1) - (2).

(a) Turning to Clouthier's fraud claim, "fraud requires five essential elements: a false representation, scienter, inducement, reliance, and injury resulting from reliance on the false representation." (Citation and punctuation omitted.) *Cox v. Bank of America, N. A.*, 321 Ga. App. 806, 807 (2) (742 SE2d 147) (2013). "Fraud, though, does not have to be committed solely by wil[l]ful misrepresentation." *E-Z Serve Convenience Stores, Inc. v. Crowell*, 244 Ga. App. 43, 46 (1) (b) (535 SE2d 16) (2000). By its very nature, fraud "is subtle and can be accomplished in an infinite number of ways including signs and tricks and even, in some instances, by silence." (Citation omitted.) Id. See *Woodall v. Orkin Exterminating Co.*, 175 Ga. App. 83, 84 (332 SE2d 173) (1985) (explaining that it is "impossible to state any general rule by which particular frauds are to be identified" because fraud is "exceedingly subtle" in nature and "almost, if not quite, impossible" to classify). Indeed, fraud may be consummated by "*any . . .* unfair way used to cheat another." (Emphasis supplied.) OCGA § 23-2-56. Further, even "slight circumstances may be sufficient to carry conviction of [fraud's] existence." (Citation omitted.) *Fed. Ins. Co. v. Westside*

6

*Supply Co.*, 264 Ga. App. 240, 242 (1) (590 SE2d 224) (2003). Thus, MCCG need not have overtly and falsely sworn that its claimed lien amount was reasonable in order for Clouthier to have pleaded a fraud claim, and the trial court erred in ruling otherwise.

As explained above, MCCG is only allowed a hospital lien for "reasonable charges," but MCCG stated in the lien affidavit that its lien was claimed "as provided for" in the hospital lien statutes. Clouthier alleged that MCCG filed a lien using the hospital lien statutes knowing that the claimed amount of the lien was excessive and unreasonable and that MCCG did so with the intent to collect more than a reasonable charge for the services rendered to Clouthier. Conceivably, evidence may be introduced that MCCG did the above while knowing that it would not actually be able to recover on the lien in the amount claimed and also knowing that Clouthier cannot freely spend the settlement money while the lien is in effect.[3] Accordingly, the complaint sufficiently stated a claim for fraud.[4]

---

[3] Indeed, MCCG acknowledges that there would be "legal repercussions" if Clouthier were to spend the settlement money without paying MCCG.

[4] MCCG argues that, in the end, it will only be able to *enforce* a lien for reasonable charges, and there was no fraud in *claiming* a lien amount that reflected the chargemaster rates. This argument does not aid MCCG's position because it only points to the crux of Clouthier's complaint — that MCCG placed the lien on his tort

We reject MCCG's contention that any representation that the lien amount was reasonable was merely an expression of opinion, which cannot serve as a basis for fraud. This Court has held that

> redress for fraud may also be had where, there being no particular confidential relation, reliance is placed on the speaker on account of his special knowledge and the hearer's ignorance, as where the speaker is an expert with respect to the transaction involved and the hearer is not; and in such cases the hearer may without further investigation rely on the speaker's statements *even where they might otherwise be deemed mere expressions of opinion . . . or assertions of . . . value*. To come within this rule it is not . . . necessary that the fact misrepresented should have been exclusively within the speaker's knowledge.

(Citation omitted; emphasis supplied.) *Tri-E. Petroleum Corp. v. Glenn's Super Gas, Inc.*, 178 Ga. App. 144, 146 (342 SE2d 346) (1986).

Clouthier alleged that MCCG collects and accepts as full payment an average of approximately 29 percent of the chargemaster rates. According to the complaint, Clouthier only discovered this information through MCCG's reports for the period of October 1, 2015 to September 20, 2016. Clouthier also alleged that a law firm contacted MCCG on his behalf in August 2017, requesting that MCCG provide an

---

action(s) in the amount of the chargemaster rates in an effort to collect more than would ultimately be allowed under statute.

8

amount it would accept as full reimbursement for the services he received, had these services been billed to Medicare or BlueCross/Blueshield. According to the complaint, however, MCCG refused to provide any information to the law office to help determine a reasonable charge for Clouthier's medical bills, and MCCG did not disclose to Clouthier that it only collected approximately 29 percent of the chargemaster rates from nearly all of its other patients. Thus, there may be evidence that MCCG regularly conducts business in medical billing and had specialized knowledge of which Clouthier was ignorant — i.e., the average amount that would have been billed for his treatment if he had been insured — and that Clouthier relied on MCCG's knowledge.

In light of the exceedingly subtle nature of fraud, "it cannot be said as a matter of law that it appears beyond doubt that [Clouthier] will not be able to prove" facts that would entitle him to relief on his fraud claim. *Holloway v. Dougherty County School System*, 157 Ga. App. 251, 255 (277 SE2d 251) (1981). Thus, the trial court erred in granting MCCG's motion to dismiss as to the fraud claim.

(b) Clouthier's negligent misrepresentation claim also survives MCCG's motion to dismiss. The essential elements of negligent misrepresentation are "(1) the defendant's negligent supply of false information to foreseeable persons, known or

9

unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *J. E. Black Const. Co. v. Ferguson Enterprises, Inc.*, 284 Ga. App. 345, 348 (643 SE2d 852) (2007). Notably, "the same principles apply to both fraud and negligent misrepresentation cases and . . . the only real distinction between negligent misrepresentation and fraud is the absence of the element of knowledge of the falsity of the information disclosed." (Citation and punctuation omitted.) *Holmes v. Grubman*, 286 Ga. 636, 640-641 (1) (691 SE2d 196) (2010).

Here, Clouthier claimed that MCCG filed liens in amounts that were excessive of a reasonable charge for the care and treatment rendered, that MCCG failed to exercise reasonable care in doing so, and that it was foreseeable that Clouthier would receive and rely on the lien and the statements in the lien. Given our conclusion in Division (1) (a), we determine that Clouthier's negligent misrepresentation claim also withstands MCCG's motion to dismiss.

Although MCCG complains that Clouthier did not plead any economic loss as part of his fraud and negligent misrepresentation claims, "[c]omplaints do not have to allege facts sufficient to set forth a cause of action and . . . it is no longer necessary for a complaint to set forth all of the elements of a cause of action in order to survive

10

a motion to dismiss for failure to state a claim." (Citations omitted.) *Scott v. Scott*, 311 Ga. App. 726, 729 (1) (716 SE2d 809) (2011). See also *Holloway*, supra, 157 Ga. App. at 255 ("[T]he objective of the [Civil Practice Act] is to avoid technicalities and to require only a short and plain statement of the claim that will give the defendant fair notice of what the claim is and a general indication of the type of litigation involved; the discovery process bears the burden of filling in details.") (citation omitted).

In his complaint, Clouthier alleged that he was damaged by MCCG's purported fraud and negligent representation. Within the framework of his complaint, Clouthier may be able to introduce evidence that he incurred actual damages and economic loss as a result of MCCG's lien on his settlement funds; the possibility that this evidence exists is sufficient for pleading purposes. See *Austin v. Clark*, 294 Ga. 773, 775 (755 SE2d 796) (2014) ("At this stage in the litigation, it does not matter that the existence of [the supporting evidence] is unlikely."); *Marshall v. McIntosh County*, 327 Ga. App. 416, 423 (3) (b) (759 SE2d 269) (2014) ("[I]n light of the minimal requirements of notice pleading, broad and conclusory allegations are not fatal to a plaintiff's claim

11

at the motion-to-dismiss stage.") (citation and punctuation omitted).[5] Thus, we reverse the trial court's dismissal of Clouthier's claims for fraud and negligent misrepresentation.

(c) Next, we determine that the trial court also erred in dismissing Clouthier's RICO claim. Even assuming that MCCG did not make a false statement in its lien affidavit, a careful examination of Clouthier's complaint reveals that he stated a claim for relief under Georgia's RICO Act.

The Act provides:

(a) It shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, *to acquire or maintain, directly or indirectly, any interest in or control of* any enterprise, real property, or *personal property of any nature, including money*.

. . .

(c) It shall be unlawful for any person to conspire or *endeavor* to violate any of the provisions of subsection (a) . . . of this Code section.

---

[5] For these reasons, we are also unpersuaded by MCCG's argument that Clouthier's claims fail because he did not plead additional elements of fraud and negligent misrepresentation.

12

(Emphases supplied.) OCGA § 16-14-4.[6] Theft by deception, or even an *attempt* thereof, may constitute racketeering activity. OCGA § 16-14-3 (5) (A) (xii). And, "[a] person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property." OCGA § 16-8-3 (a). Such deception includes

> (1) Creat[ing] or confirm[ing] another's impression of an existing fact or past event which is false and which the accused knows or believes to be false; [and]

> (2) Fail[ing] to correct a false impression of an existing fact or past event which he has previously created or confirmed[.]

OCGA § 16-8-3 (a) (b) (1) - (3).

Here, Clouthier alleged that, in furtherance of violating OCGA § 16-14-4 (a), MCCG attempted to commit theft by deception. Specifically, Clouthier claimed that

---

[6] "[A] corporation is a 'person' for purposes of the Georgia civil RICO Act." *Williams Gen. Corp. v. Stone*, 280 Ga. 631 (632 SE2d 376) (2006). We also note that "a violation of OCGA § 16-14-4 (a) does not require that there be proof of an 'enterprise,' but only that the accused through a pattern of racketeering activity or proceeds derived therefrom, acquire or maintain, directly or indirectly, any . . . real property or personal property of any nature, including money." (Citation and punctuation omitted.) *Cobb County v. Jones Group P.L.C.*, 218 Ga. App. 149, 152-153 (2) (460 SE2d 516) (1995).

13

MCCG has a practice of filing sworn liens for the chargemaster rates, that he and other putative class members had no knowledge of this scheme or any reason to believe that MCCG would file liens for far more than the reasonable rates for the services rendered, and that MCCG did not disclose to them that it only collected approximately 29 percent of the chargemaster rates from nearly all of its other patients. Clouthier also claimed that when he asked MCCG to reduce its lien to a reasonable amount, MCCG said that it would reduce the lien by 10 percent for immediate payment, and then reduced the lien to $45,485.51.

Clouthier may introduce evidence that, in order to gain a greater percentage of his tort recovery, MCCG either created or confirmed the false impression that it had claimed a lien amount that was commensurate with the amounts billed to most of its other patients, even though MCCG knew this to be untrue. Alternatively, there may be evidence that MCCG created or confirmed such a false impression and then failed to correct it. Also, evidence may be introduced that MCCG did the same with other

14

patients, all in an attempted theft by deception.[7] Thus, we conclude that Clouthier

sufficiently stated a claim for a violation of Georgia's RICO Act.[8]

In sum, it does not appear to a legal certainty that Clouthier would be entitled

to no relief under any state of facts which could be proved in support of his claims,

and therefore we reverse the trial court's dismissal of the complaint.

*Judgment reversed. Rickman and Reese, JJ., concur.*

---

[7] In *Medical Center, Inc. v. Bowden*, 348 Ga. App. 165, 185-186 (3) (a) (820 SE2d 289) (2018) (physical precedent only), this Court held that the hospital defendant was entitled to summary judgment on the plaintiff's RICO violations claim because, "[a]ssuming [the hospital's] lien amounts were unreasonable, such does not render the practice of filing liens, as permitted by statute, one of the RICO predicate offenses." Insofar as that holding can be read to apply here in the context of a motion to dismiss, we note that that decision was non-binding physical precedent and the Court did not undertake the specific analysis set forth in this case. See Court of Appeals Rule 33.2 (a) (1). Thus, we are not compelled to reach a different result based on the holding in *Bowden*, supra, 348 Ga. App. at 185-186 (3) (a).

[8] As amici curiae, the Georgia Hospital Association and the Georgia Alliance of Community Hospitals argue that we should nevertheless affirm the dismissal of Clouthier's claims because they are based on an alleged violation of the lien statutes, and such a violation does not give rise to a private cause of action. As MCCG concedes, however, Clouthier did not purport to sue for a violation of the lien statutes themselves.